Sophie M. MALTAIS, Individually and as Executrix of the Last Will and Testament of Arthur Maltais, Deceased, Plaintiff,

v.

UNITED STATES of America, Sweet Associates, Inc., General Dynamics (Electric Boat Division), General Electric Company, Northway Decking and Sheetmetals, Inc., West Side Structural Company, Inc., Clifton Steel Corp., and General Steel Fabricators, Inc., Defendants.

UNITED STATES of America, Sweet Associates, Inc., General Dynamics (Electric Boat Division), and General Electric Company, Defendants and Third-Party Plaintiffs,

v.

CYCLOPS CORPORATION (ELWIN G. SMITH DIVISION), Third-Party Defendant.

No. 77–CV–98.

United States District Court,
N. D. New York.

Oct. 19, 1977.

Martin, Noonan, Hislop, Troue & Shudt, Troy, N. Y., for plaintiff; Bernard Simon, Troy, N. Y., of counsel.

Paul V. French, U. S. Atty., N.D.N.Y., Albany, N. Y., for defendant and third-party plaintiff United States; Terrence M. Kelly, Asst. U. S. Atty., Albany, N. Y., of counsel.

Ainsworth, Sullivan, Tracy & Knauf, Albany, N. Y., for defendant West Side Structural Co., Inc.; Thomas F. Tracy, Albany, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

FOLEY, Chief Judge.

Based on the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, plaintiff has brought this action against the United States of America to recover damages for the personal injury and death of Arthur Maltais. The complaint alleges jurisdiction under 28 U.S.C. § 1346, and plaintiff seeks to have this Court exercise pendent-party jurisdiction over related but nonfederal claims asserted against seven corporate defendants. By motion pursuant to Fed.R.Civ.P. 12(b)(1), defendant West Side Structural Company, Inc. ("West Side") requests dismissal of the nonfederal claims for lack of jurisdiction over the subject matter.

It is undisputed that there is no independent predicate for subject-matter jurisdiction between plaintiff and defendant West Side in the absence of diversity of citizenship. Plaintiff, the widow and executrix of the estate of Arthur Maltais, is a resident and citizen of the State of New York. The only surviving next of kin, heirs, and dependents of Arthur Maltais are plaintiff and their two infant children. Furthermore, the decedent died a resident and citizen of the State of New York. Thus, the issues of real party in interest or manufactured diversity are not before this Court. *E. g., Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931); *O'Brien v. Avco Corp.,* 425 F.2d 1030 (2d Cir. 1969).

It has long been established that diversity jurisdiction must be based upon "complete" diversity between all plaintiffs and all defendants. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806). For diversity purposes, defendant West Side is deemed a citizen of the State of New York where it is incorporated and has its principal place of business. 28 U.S.C. § 1332(c). Furthermore, in its answer, defendant General Electric Company ("General Electric"), a New York corporation, had set forth lack of diversity of citizenship as an affirmative defense. General Electric, however, has withdrawn this defense in an amended answer filed on August 25, 1977.

Of the seven corporate defendants joined in this action, only one, General Dynamics (Electric Boat Division) ("General Dynamics") is purportedly not incorporated under the laws of the State of New York. In addition, although Sweet Associates, Inc. ("Sweet Associates") admitted incorporation under the laws of New York in its answer, it has alleged incorporation outside the State of New York in other pleadings. It is clear, however, that diversity jurisdiction does not provide a jurisdictional predicate for plaintiff's claims against defendant West Side in this Court.

Plaintiff's sole allegation of jurisdiction in her complaint is founded on the Federal Tort Claims Act. 28 U.S.C. § 1346. See Fed.R.Civ.P. 8(a)(1). Nevertheless, plaintiff may assert reliance on the doctrine of pendent jurisdiction to justify consideration of additional claims since this Court already has jurisdiction over plaintiff's claim against the United States. Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 809 n. 10 (2d Cir. 1971).

The federal courts are courts of limited jurisdiction and therefore authority to adjudicate disputes must be found in congressional grants of federal jurisdiction as well as Art. III, § 2 of the Constitution. In this action, plaintiff does rely on the doctrine of pendent jurisdiction and seeks to have this Court recognize the existence of federal judicial power to entertain claims against parties over whom no independent grounds for the exercise of jurisdiction exists. Furthermore, in this action arising out of a fatal accident which occurred at a construction site in Saratoga County, New York, plaintiff requests that this Court exercise that power to adjudicate related state-law claims.

Thus presented, defendant West Side's motion raises two substantial questions: (1) Whether this Court has the power to entertain state-law claims against "pendent parties," over whom no independent grounds for the exercise of federal jurisdiction exists, in an action brought against the United States under the Federal Tort Claims Act; and (2) If this federal judicial power

exists, whether this Court should exercise that power over the nonfederal claims asserted by plaintiff herein.

I

Since the sole issue now before this Court is a question of law, the facts will only be briefly stated. On June 9, 1975, Arthur Maltais, an employee of the Elwin G. Smith Division of the Cyclops Corporation ("Cyclops"), while acting in the course of his employment fell to his death from atop the S8G Administration and Training Building located at the Kenneth A. Kesselring site of the Knolls Atomic Power Laboratory, West Milton, New York. The building premises and site involved in this mishap are owned by the United States.

Plaintiff asserts that these premises were in the possession and control of the United States, General Electric, General Dynamics, and Sweet Associates during the chain of events that led to decedent's death. It is alleged that decedent, while in the process of installing insulated metal siding, was handling a reinforcing bar which had been installed near the edge of the roof of one of the buildings at the Kesselring site when the bar allegedly broke and collapsed causing decedent to fall approximately 40 feet.

It is alleged that Cyclops, a Pennsylvania Corporation, had entered into a subcontractors agreement with Sweet Associates to install insulated metal siding on buildings at the Kesselring site. In addition, plaintiff asserts that Northway Decking and Sheet Metal Corp. ("Northway"), Clifton Steel Corp. ("Clifton"), and General Steel Fabricators, Inc. ("General Steel") are subcontractors and suppliers of steel and reinforcing bars which were used in the construction of the buildings at the Kesselring site. It is further alleged that these corporate defendants along with West Side are responsible for the furnishing and installation of steel at this construction site.

Letters Testamentary were issued to plaintiff, decedent's spouse, on July 17, 1975. Thereafter, on May 31, 1976, plain-

tiff filed a claim with the Energy Research and Development Administration ("ERDA"), an agency of the United States, in accordance with the Federal Tort Claims Act. 28 U.S.C. §§ 2401(b), 2675. On March 29, 1977, plaintiff commenced the present action individually and as executrix of the estate of Arthur Maltais following the October 7, 1976, denial of her claim by ERDA.

Plaintiff's first claim for relief seeks damages for negligence and is brought against the United States, Sweet Associates, General Dynamics, General Electric, Northway, West Side, Clifton, and General Steel. Plaintiff's second and third claims seek damages for breach of warranty and strict products liability, respectively, and are brought only against the above-mentioned seven corporate defendants. Damages are sought in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00).

Consequently, following the usual pattern of negligence cases governed by New York law, the United States has cross-claimed against Sweet Associates, Northway, West Side, Clifton, and General Steel and has also commenced a third-party action against Cyclops. Additionally, General Dynamics and Northway have both cross-claimed against all named defendants including the United States; General Electric has cross-claimed against Sweet Associates, Northway, West Side, Clifton, and General Steel; Sweet Associates has cross-claimed against Northway, West Side, Clifton, and General Steel; and General Dynamics and General Electric have both commenced third-party actions against Cyclops. Furthermore, on September 19, 1977, I granted Sweet Associates' unopposed motion for leave to serve a third-party complaint upon Cyclops. As of this time, General Steel has failed to respond to any of these pleadings.

The grounds for the cross-claims against Sweet Associates and the third-party actions against Cyclops are in part premised upon a contractual indemnification provision. *See United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). The remaining cross-claims in this action are founded on established principles of indemnification and contribution based on comparative culpability.

## II

By virtue of the Federal Tort Claims Act, the United States has consented to a partial waiver of sovereign immunity. *See Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); 1 J. Moore, Federal Practice ¶ 0.65[2.–4] (2d ed. 1977); 1 L. Jayson, Handling Federal Tort Claims § 162 (1977). Although the Act is a waiver of immunity by the United States, courts have not felt bound to utilize a literal or narrow construction when called upon to construe its language. *See United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Rayonier Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954); 1 L. Jayson, Handling Federal Tort Claims § 67 (1977).

It is beyond doubt that in an action brought under the Federal Tort Claims Act the United States may implead a third-party defendant. *United States v. Yellow Cab Co.*, 340 U.S. 543, 551–52, 71 S.Ct. 399, 95 L.Ed. 523 (1951); 28 U.S.C. § 1345; Fed. R.Civ.P. 14. Furthermore, within the framework of the Act and its waiver of sovereign immunity is the United States' consent to be sued for indemnification or contribution claimed by a joint tortfeasor. *United States v. Yellow Cab Co., supra.* In addition, that it is permissible to join other defendants with the United States under the Act can, in my opinion, no longer be challenged. *E. g., Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (by implication); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (by implication); *United States v. Yellow Cab Co., supra,* (by implication); *Holden v. Commonwealth of Australia*, 369 F.Supp. 1258 (N.D.Cal.1974); *Brandt v. United States*,

110 F.Supp. 627 (D.Guam 1953); Fed.R. Civ.P. 20(a); 1 L. Jayson, Handling Federal Tort Claims § 176.01 (1977).

With this ground work in place, this Court must now address itself to that "'subtle and complex question with far-reaching implications' . . . whether the doctrine of pendent jurisdiction extends to confer jurisdiction over a party as to whom no independent basis of federal jurisdiction exists" in an action brought under the Federal Tort Claims Act. *Aldinger v. Howard, supra,* at 2–3, 96 S.Ct. 2413, *quoting Moor v. County of Alameda,* 411 U.S. 693, 715, 93 S.Ct. 1785, 32 L.Ed.2d 596 (1973). This question of "power" and the wavering development of the doctrine of pendent jurisdiction continue to present issues elusive of simple determination. *See, e. g., Philbrook v. Glodgett,* 421 U.S. 707, 720–22, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Strachman v. Palmer,* 177 F.2d 427, 431 (1st Cir. 1949) (Magruder, C. J., concurring).

■ Analysis of these issues must begin with the ill-defined concept of ancillary jurisdiction. The doctrine of ancillary jurisdiction, as first enunciated in *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861) and further developed in the federal courts, recognizes that the complexity of many lawsuits and the problems created by piecemeal litigation often require that subordinate issues attached to a federal claim be adjudicated in one federal action irrespective of an independent jurisdictional predicate. *See generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3523 (1975).

For instance, ancillary jurisdiction may be used to support the power of a federal court to entertain compulsory counterclaims pursuant to Fed.R.Civ.P. 13(a) [*Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Pipeliners Local 798 v. Ellerd,* 503 F.2d 1193 (10th Cir. 1974); *United Artists Corp. v. Masterpiece Productions,* 221 F.2d 213 (2d Cir. 1955)]; cross-claims pursuant to Fed.R.Civ.P. 13(g) [*City of Boston v. Boston Edison Co.,* 260 F.2d 872 (1st Cir. 1958); *Mayer v. Chase National Bank,* 165 F.Supp. 287 (S.D.N.Y.

1958)]; third-party actions pursuant to Fed. R.Civ.P. 14 [*Dery v. Wyer,* 265 F.2d 804 (2d Cir. 1959)]; interpleader pursuant to Fed.R. Civ.P. 22 [*Republic of China v. American Express Co.,* 195 F.2d 230 (2d Cir. 1952)]; and intervention as of right pursuant to Fed.R.Civ.P. 24(a) [*Hoffman v. McClelland,* 264 U.S. 552, 44 S.Ct. 407, 68 L.Ed. 845 (1924); *Wichita R. R. & Light Co. v. Public Utilities Commission,* 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922); *Lenz v. Wagner,* 240 F.2d 666 (5th Cir. 1957)]; even if such procedural maneuvers would apparently alter proper venue requirements. *E. g., Lesnik v. Public Industrials Corp.,* 144 F.2d 968, 973–77 (2d Cir. 1944); *Thompson v. United Artists Theatre Circuit, Inc.,* 43 F.R.D. 339 (S.D.N.Y.1967); *Moncrief v. Pennsylvania R. R.,* 73 F.Supp. 815 (E.D.Pa.1947).

■ It must be remembered, however, that although "joinder of claims, *parties* and remedies is strongly encouraged" under the Federal Rules, *United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (emphasis added), these Rules cannot extend the jurisdictional or venue requirements of federal courts. Fed. R.Civ.P. 82. Therefore, it is important to note that ancillary jurisdiction has been recognized only when the subordinate dispute arose out of the same transaction or occurrence as the federal claim. *E. g., Fulton National Bank v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1925); *United States v. United Pacific Insurance Co.,* 472 F.2d 792 (9th Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973); *United States v. Heyward-Robinson Co.,* 430 F.2d 1077 (2d Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

Thus, it has been held by some courts that a plaintiff may not amend his complaint to include a direct claim against a third-party defendant in the absence of an independent basis for subject-matter jurisdiction. *E. g., Johnson v. Better Materials Corp.,* 556 F.2d 131 (3d Cir. 1976) (per curiam), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977); *Fawvor v. Texaco, Inc.,* 546 F.2d 636 (5th Cir. 1977); *Saal-*

*frank v. O'Daniel*, 533 F.2d 325 (6th Cir.), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890 (4th Cir. 1972). Other courts, however, have held otherwise. *E. g., Hood v. Fireman's Fund Insurance Co.*, 412 F.Supp. 846 (S.D.Miss. 1976); *Morgan v. Serro Travel Trailer Co.*, 69 F.R.D. 697 (D.Kan.1975); *CCF Industrial Park, Inc. v. Hastings Industries, Inc.*, 392 F.Supp. 1259 (E.D.Pa.1975); *Davis v. United States*, 350 F.Supp. 206 (E.D.Mich.1972); *accord*, 3 J. Moore, Federal Practice ¶ 14.-27[1] (2d ed. 1977); 6 C. Wright & A. Miller, Federal Practice & Procedure § 1444, at 229–32 (1971).

Yet, under the doctrine of ancillary jurisdiction, additional parties have been joined in an action brought before a federal court even though no independent basis of federal jurisdiction had been shown to exist. *E. g., Stewart v. Dunham*, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885) (intervention); *United Artists Corp. v. Masterpiece Productions, supra*, (compulsory counterclaim); *City of Orangeburg v. Southern Ry.*, 134 F.2d 890 (4th Cir. 1943) (joinder of necessary parties).

At the same time that the doctrine of ancillary jurisdiction was evolving, the doctrine of pendent jurisdiction was also unfolding in the federal courts. The doctrine of pendent jurisdiction can be traced back to *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 821–23, 6 L.Ed. 204 (1824) (Marshall, C. J.). *See Kaz Manufacturing Co. v. Cheesebrough-Pond's Inc.*, 211 F.Supp. 815, 821 n. 14 (S.D.N.Y.1962), *aff'd*, 317 F.2d 679 (2d Cir. 1963); 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3567 (1975).

Although there are many similarities between these doctrines of ancillary and pendent jurisdiction, distinctions do exist. To date, however, the Supreme Court has declined to determine "whether there are any 'principled' differences" between these two doctrines. *Aldinger v. Howard, supra*, 427 U.S. at 13, 96 S.Ct. at 2419. Nonetheless, rather than dealing with subordinate or dependent claims, the doctrine of pendent jurisdiction *usually* involves the endeavors by plaintiffs to join an independent "nonfederal claim" with a claim "arising under" the Constitution, laws, or treaties of the United States. Due to their similarities, however, it is not uncommon to find that a legal writer has applied one doctrine under the banner of the other or to find a combination of both doctrines serving as authority for a single legal proposition.

█ Nevertheless, the doctrine of pendent jurisdiction concerns the federal judicial power to take cognizance of and adjudicate issues within the contours of Art. III, § 2 of the Constitution. In the landmark decision of *United Mine Workers v. Gibbs, supra*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court adopted a broad definition of the term "case" as used in Art. III. In *Gibbs*, the Supreme Court stated that

> [p]endent jurisdiction, in the sense of judicial *power*, exists whenever . . . the relationship between . . . [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' . . . [and is] derive[d] from a common nucleus of operative fact . . . [which] would ordinarily be expected to . . . [be tried] all in one judicial proceeding. . . .

*United Mine Workers v. Gibbs, supra*, at 725, 86 S.Ct. at 1138 (footnotes omitted). This result fosters a policy of "judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139. .

Following this pronouncement by the Supreme Court, litigants have sought to extend the *Gibbs* rationale to "pendent parties." Recently however, the Supreme Court has rejected the concept of pendent-party jurisdiction when asserted against a municipal corporation in an action brought under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. *Aldinger v. Howard, supra*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), *discussed in* 3A J. Moore, Federal Practice ¶ 20.07[5.--1] (2d ed. 1977).

In *Aldinger*, the Supreme Court approached the question of federal judicial power over "pendent parties" from a twofold prospective. Before pendent-party jurisdiction is sustained in a particular case, the Supreme Court held that a court must satisfy itself that such power is within the ambit of statutory jurisdictional considerations as well as Art. III of the Constitution. *Aldinger v. Howard, supra.* The Court went on to hold that since Congress has by implication negated the existence of federal jurisdiction over a municipal corporation in a claim brought pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, pendent-party jurisdiction could not be used to assert a state-law claim against that same entity in a federal court. Thus, a narrow reading of the *Aldinger* decision and distillation of its cautious attitude could support the conclusion that since the Court's reasoning was based on congressional will, the second element of the Court's twofold analysis, no pronouncement was made concerning the merits of the constitutional issue, *i. e.*, the judicial power given to federal courts by virtue of Art. III. Such an interpretation would be in line with the general principle that federal constitutional determinations should be avoided where another ground upon which to base a decision is available. *Siler v. Louisville & Nashville R.R.*, 213 U.S. 175 (1909).

The *Aldinger* Court, however, stated that in rejecting this kind of pendent-party jurisdiction it was not prepared to make "any sweeping pronouncement upon the existence or *exercise*" of pendent-party jurisdiction. *Aldinger v. Howard, supra*, at 18, 96 S.Ct. at 2422 (emphasis added). More importantly, in my opinion, it is possible to glean from the Court's decision and development of a twofold approach in *Aldinger* as well as its rationale in *Gibbs* that a doctrine of pendent-party jurisdiction, the perimeters of which are still unclear, would not go against the grain of interpretation worked into Art. III of the Constitution. *See Aldinger v. Howard, supra*, at 21–22, 96 S.Ct. 2413 (Brennan, J., dissenting). Indeed, a contrary result may prove difficult to support. *Cf. Mitchum v. Foster*, 407 U.S. 225, 231, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). In my judgment, this Court has the power to entertain claims against "pendent parties" in an action brought against the United States under the Federal Tort Claims Act. *See Jacobs v. United States*, 367 F.Supp. 1275 (D.Ariz.1973); *Hipp v. United States*, 313 F.Supp. 1152 (E.D.N.Y. 1970).

First, the grant of jurisdiction to the federal courts under the Federal Tort Claims Act is exclusive. 28 U.S.C. § 1346(b). "[O]nly in a federal [district] court may all of the[se] claims be tried together." *Aldinger v. Howard, supra*, at 18, 96 S.Ct. at 2422 (footnote omitted). The efficiency and convenience that this plaintiff seeks is not available in any other court.

Under § 1346(b) and subject to the Federal Tort Claims Act the federal district courts are given

> exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . .

Furthermore, in such an action, this grant of federal jurisdiction includes the power to adjudicate "any set-off, counterclaim, or *other claim or demand whatever* on the part of the United States against any plaintiff." 28 U.S.C. § 1346(c) (emphasis added). Nothing in this language negates the existence of federal judicial power over the pendent state-law claims asserted by plaintiff in this action. To the contrary, the language of these subsections would indicate that Congress intended the ultimate monetary liability of the United States for its torts to be determined in a single action brought in a federal court.

Second, the federal and nonfederal claims asserted in this action share a common nucleus of operative fact. Plaintiff's claims against the United States and the seven named corporate defendants are completely

intertwined. All defendants are bound together by contractual agreements containing indemnity clauses. The basis of plaintiff's action is the single incident which caused the death of Arthur Maltais. There is but one set of operative facts at the core of plaintiff's action.

Third, the Supreme Court has noted that "a more serious obstacle to the exercise of pendent jurisdiction" exists when the party to be brought before the court is not otherwise subject to federal jurisdiction. *Aldinger v. Howard, supra*, at 18, 96 S.Ct. at 2422. Moreover, the *Aldinger* Court was concerned that a litigant not be able to "circumvent" congressional intent and thus do indirectly what Congress has determined should not be done directly. In an action brought against the United States under the Federal Tort Claims Act, the United States may certainly implead a party who may be liable to the United States for all or part of a plaintiff's claim. Indeed, this is what was done in the present lawsuit. Furthermore, it is very likely that if some of the defendants in this action were not named in the complaint, the United States would have commenced third-party actions against them as well. On the present motion, the United States has submitted papers in opposition to defendant West Side's request for dismissal of plaintiff's nonfederal claims. This can only be viewed as an effort by the United States to protect its cross-claims asserted in this action. If West Side's motion was granted the United States would undoubtedly once again bring West Side before this Court by third-party action. It is evident that the ultimate monetary liability of the United States cannot be determined with finality in a single lawsuit unless all the parties to this action are properly brought before this Court.

Thus, it can be seen that under the Federal Tort Claims Act pendent-party jurisdiction would not necessarily bring parties before a federal court that would not otherwise be subject to federal jurisdiction. Additionally, in my judgment, it would be permissible for plaintiff to amend her complaint against all seven corporate defendants if the United States had brought them

into this action by third-party complaint. *See generally Musher Foundation, Inc. v. Alba Trading Co.*, 127 F.2d 9, 11 (2d Cir. 1942) (Clark, J., dissenting). The federal interest in this action would favor direct recovery from these seven corporate defendants rather than recovery through the treasury of the United States. Therefore, to deny the existence of pendent-party jurisdiction in an action brought under the Federal Tort Claims Act when no independent jurisdictional predicate exists would mean allowing a plaintiff limited entrance through the back door of the courthouse while maintaining a bolt on the front. *Cf. Laird v. Nelms, supra*, 406 U.S. at 802, 92 S.Ct. 1899. Utilization of such an approach would "defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation." *Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970); *see also Telechron v. Parissi*, 197 F.2d 757 (2d Cir. 1952).

■ Finally, the congressional intent behind the Federal Tort Claims Act was to make the United States accountable for its torts without undue delay and in a like manner as private persons, not to protect individuals or corporations from suit in federal court. *See, e. g.,* 1 L. Jayson, Handling Federal Tort Claims §§ 65, 66 (1977). In my judgment, the federal interest lies in providing a single federal forum for the resolution of all disputes in an action of this kind. *Cf. Shannon v. United States*, 417 F.2d 256, 263 (5th Cir. 1969) (action under Servicemen's Group Life Insurance Act). Only in this way will plaintiffs be provided with a forum capable of securing a "just, speedy, and inexpensive determination" of actions brought under the Federal Tort Claims Act. Fed.R.Civ.P. 1.

I make this determination fully aware of a long line of decisions out of the Court of Appeals, Ninth Circuit, which are in disagreement. *E. g., Ayala v. United States*, 550 F.2d 1196 (9th Cir.), *cert. granted,* —— U.S. ——, 98 S.Ct. 50, 54 L.Ed.2d 70 (1977); *Williams v. United States*, 405 F.2d 951 (9th

Cir. 1969); *Benbow v. Wolf,* 217 F.2d 203 (9th Cir. 1954); *accord, Howard v. United States,* 214 F.Supp. 263 (E.D.Tenn.1963). I am more persuaded and bound, however, by the pre-*Aldinger* decisions of the Court of Appeals, Second Circuit. *See also Moor v. County of Alameda, supra,* 411 U.S. at 713–15, 93 S.Ct. 1785; *Florida East Coast Ry. v. United States,* 519 F.2d 1184 (5th Cir. 1975); *Trustees of Colorado Pipe Industry Employee Benefit Funds v. Colorado Springs Plumbing & Heating Co.,* 388 F.Supp. 71, 75 nn. 1 & 2 (D.Colo.1975).

In a trilogy of panel decisions authored by Judge Friendly, this Circuit has been liberal in its application of pendent-party jurisdiction. *Almenares v. Wyman,* 453 F.2d 1075, 1083–86 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962; 30 L.Ed.2d 815 (1972); *Leather's Best, Inc. v. S.S. Mormaclynx, supra,* 451 F.2d at 809–11; *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.,* 441 F.2d 627 (2d Cir. 1971). *See Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176 (2d Cir. 1974) (Friendly, J.). The only decision by the Court of Appeals, Second Circuit, dealing with pendent-party jurisdiction in the context of an action brought under the Federal Tort Claims Act, however, rejected its application. *Wasserman v. Perugini,* 173 F.2d 305 (2d Cir. 1949). Suffice it to say that *Wasserman* preceded the expansion of pendent jurisdiction as delineated in *Gibbs* and therefore is not controlling. *Astor-Honor, Inc. v. Grosset & Dunlap, Inc., supra,* 629–30; *accord, Florida East Coast Ry. v. United States, supra,* at 1195.

In my judgment, the present case presents a much more compelling case for the recognition of pendent-party jurisdiction than when no federal questions are involved at all. *See Zahn v. International Paper Co.,* 414 U.S. 291, 302, 304 n. 5, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (Brennan, J., dissenting); *Fawvor v. Texaco, Inc., supra,* 546 F.2d at 638–41; *Glover v. City of New York,* 401 F.Supp. 632, 636 (E.D.N.Y. 1975). *Contra, Stone v. Stone,* 405 F.2d 94, 97 (4th Cir. 1968); *Jacobson v. Atlantic City Hospital,* 392 F.2d 149, 155 (3d Cir. 1968). A court must not lose sight of the fact that the doctrine of pendent-party jurisdiction

requires that a court give "careful attention to the relevant statutory language" involved in each particular action. *Aldinger v. Howard, supra,* at 17, 96 S.Ct. at 2421. Thus, a decision such as this under 28 U.S.C. § 1346 does not affect the existence or nonexistence of pendent-party jurisdiction under any other grant of federal jurisdiction. In any event, it is not too risky to speculate that the entire doctrine of pendent jurisdiction will undergo further analysis in this post-*Aldinger* period.

### III

The only question remaining before this Court is whether this federal judicial power should be exercised to adjudicate the nonfederal claims asserted by plaintiff in this action. Under the doctrine of pendent jurisdiction as enunciated in *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. 1130, the Supreme Court has set forth guidelines for the discretionary exercise of that jurisdiction. *See Hagans v. Lavine,* 415 U.S. 528, 545–50, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Moor v. County of Alameda, supra,* 411 U.S. at 715–16, 93 S.Ct. 1785; *Rosado v. Wyman, supra,* 397 U.S. at 402–07, 90 S.Ct. 1207; *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

Some of the myriad factors which a federal court should take into account when called upon to exercise pendent jurisdiction over additional claims or parties include considerations of judicial economy, convenience, and fairness to litigants, the character of the federal and nonfederal claims presented, the law to be applied, and the possibility of jury confusion. Thus, if the federal claim supporting a pendent claim is insubstantial, a court may refuse to exercise jurisdiction over the nonfederal claim. *E. g., Martin v. Louisiana & Arkansas Ry.,* 535 F.2d 892 (5th Cir. 1976), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 755 (1977). Similarly, if the nonfederal issue is the predominate claim in an action, a court may decline to exercise pendent jurisdic-

tion. *E. g., Myers v. American Leisure Time Enterprises, Inc.*, 402 F.Supp. 213, 215 (S.D.N.Y.1975), *aff'd mem.*, 538 F.2d 312 (2d Cir. 1976).

■ Furthermore, it is appropriate for a court to examine the complexities of the law to be applied. A federal court is bound to apply state law to a pendent state-law claim. *United Mine Workers v. Gibbs, supra*, at 726, 86 S.Ct. 1130; *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 780–81 (2d Cir. 1964), *cert. denied*, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). Therefore, the uniqueness or complexity of state law questions should be considered before exercising pendent jurisdiction. *E. g., Brown v. Knox*, 547 F.2d 900, 903 (5th Cir.), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2950, 53 L.Ed.2d 1078 (1977).

■ It is important to note that under the Federal Tort Claims Act it is state law which provides the applicable standards of substantive liability. 28 U.S.C. §§ 1346(b), 2672, 2674; *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); 1 L. Jayson, Handling Federal Tort Claims §§ 138, 218 (1977). Therefore, it is clear that in the present case New York law will govern the pendent claims as well as a great part of the federal claim.

The claim against the United States, however, must be tried by the Court without a jury. 28 U.S.C. § 2402. At the same time, the Seventh Amendment preserves plaintiff's right to a trial by jury on her pendent claims. *See, e. g., Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 792 (1970); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1972). Nevertheless, the Supreme Court has observed that "[s]uch difficulties are not insurmountable." *United States v. Yellow Cab Co., supra*, 340 U.S. at 555, 71 S.Ct. at 407. *See* Fed.R.Civ.P. 38, 39, 42.

Although these are important factors to be considered along with the possibility of jury confusion, it is clear that other courts have been able to cope with them. For example, in cases such as this courts have tried the pendent claims before a jury, while using the device of an advisory verdict with respect to the claim against the United States. *E. g., Moloney v. United States*, 354 F.Supp. 480, 481 (S.D.N.Y.1972). *See* 2 L. Jayson, Handling Federal Tort Claims § 305 (1977).

Plaintiff's complaint, prolix by federal pleading standards, has joined claims based on negligence, breach of warranty, and strict products liability. In addition, plaintiff's pleadings are not at all clear as to the kind of damages for which plaintiff seeks recovery. At this early stage of litigation, however, I cannot fairly decline to exercise jurisdiction over plaintiff's pendent claims.

■ Considerations of judicial economy, convenience, and fairness to all litigants coupled with the sparse record upon which to base this determination justify this Court's initial retention of plaintiff's entire action. Of course, this discretionary exercise of pendent jurisdiction is an issue which "remains open throughout the litigation." *United Mine Workers v. Gibbs, supra*, 383 U.S. at 727, 86 S.Ct. at 1139; *Abdelnour v. Coggeshall & Hicks*, 287 F.Supp. 135, 137 (S.D.N.Y.1968).

### IV

In sum, having found that this Court has the federal judicial power to entertain plaintiff's state-law claims against "pendent parties" over whom no independent grounds for the exercise of federal jurisdiction exists, defendant West Side's motion to dismiss is hereby denied in its entirety.

It is so Ordered.